UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAVIER CALVO, Derivatively on Behalf of Nominal Defendant EBIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBIN RAINA, STEVEN M. HAMIL, HANS U. BENZ, ROLF HERTER, NEIL D. ECKERT, PAVAN BHALLA, HANS UELI KELLER, and GEORGE W. HEBARD, <br><br> Defendants, <br><br> and <br><br> EBIX, INC., <br><br> Nominal Defendant. | Case No. <br><br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Javier Calvo ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Ebix, Inc. ("Ebix" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Ebix with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

1

## I. NATURE AND SUMMARY OF THE ACTION

1. Ebix supplies infrastructure exchanges to the insurance, financial, travel, cash remittances, and healthcare industries.

2. In February 2021, the Company's independent auditor, RSM US LLP ("RSM") sought additional audit evidence for significant unusual transactions that occurred in the fourth quarter of 2020. RSM had also stated that there was a material weakness over Ebix's failure to design controls "over the gift or prepaid card revenue transaction cycle sufficient to prevent or detect a material misstatement."

3. The Board did not provide the requested information to resolve the accounting and internal control issues, despite repeated inquiries, which forced RSM to resign to maintain its professional integrity. The Board then hired a new auditor that provided a clean bill of health as to the Company's internal control over financial reporting. The Board purported to conduct an investigation into the issues raised by RSM and found that "no steps are necessary with respect to any gift card business issues raised by the former auditor in its resignation."

4. These revelations precipitated the filing of a securities class action in the United States District Court for the Southern District of New York against Ebix and certain of the defendants named herein, captioned *Tiefke v. Ebix, Inc., et al.*, Case No. 21-cv-01589 (the "Securities Class Action").

5. At least half of the Company's current Board could not disinterestedly and independently respond to a litigation demand in connection with the misleading representations because, among other things, at least seven of the eight current directors knew or recklessly ignored the deficiencies in Ebix's internal control over financial reporting and failed to conduct an adequate investigation into the same. As a result, a majority of the Board could not disinterestedly investigate whether their conduct constituted breaches of fiduciary duties under Delaware law.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Section 10(b) of the Exchange Act.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.  PARTIES

**Plaintiff**

8. Plaintiff Javier Calvo purchased Ebix stock in February 2021 and has continuously owned his Ebix stock since that date.

**Nominal Defendant**

9. Nominal Defendant Ebix is a Delaware corporation with its principal executive offices located at 1 Ebix Way, Johns Creek, Georgia 30097.  The Company's common stock trades on the NASDAQ exchange under the symbol "EBIX."

**Defendants**

10. Defendant Robin Raina ("Raina") has served as Chief Executive Officer ("CEO") and President of the Company since 1999 and as Chairman of the Board since May 2002.

11. Defendant Steven M. Hamil ("Hamil") has served as Chief Financial Officer ("CFO") of the Company since April 2020.

12. Defendant Hans U. Benz ("Benz") has served as a director of the Company since 2005. He is a member of the Audit Committee.

13. Defendant Rolf Herter ("Herter") has served as a director of the Company since 2005.

14. Defendant Neil D. Eckert ("Eckert") has served as a director of the Company since 2005.

15. Defendant Pavan Bhalla ("Bhalla") has served as a director of the Company since 2004. He is Chair of the Audit Committee.

16. Defendant Hans Ueli Keller ("Keller") has served as a director of the Company since 2004. He is a member of the Audit Committee.

17. Defendant George W. Hebard ("Hebard") has served as a director of the Company since 2015.

18. Defendants Raina, Hamil, Benz, Herter, Eckert, Bhalla, Keller, and Hebard are sometimes referred to hereinafter as the "Individual Defendants."

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

### A. Fiduciary Duties

19. By reason of their positions as officers, directors, and/or fiduciaries of Ebix and because of their ability to control the business and corporate affairs of Ebix, at all relevant times, the Individual Defendants owed Ebix and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Ebix in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Ebix and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Ebix and its shareholders a fiduciary duty to exercise good faith and diligence

in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Ebix, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Ebix, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

21. To discharge their duties, the officers and directors of Ebix were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Ebix were required to, among other things:

   (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

   (b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

   (c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

   (d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**B.    Audit Committee Charter**

22. The charter for the Audit Committee provides that its members are responsible for "accounting, auditing, financial reporting and internal control functions of the Company."

23. With respect to financial reporting, the Audit Committee must:[1]

a. Meet with the Auditors and the Company's management to discuss, review and comment upon the interim financial statements to be included in each of the Company's Quarterly Reports on Form 10-Q prior to the public announcement of financial results and the filing of the Form 10-Q with the SEC. All members of the Committee are encouraged to attend these meetings; however, a quorum for these meetings or for this portion of regular meetings of the Committee may be the Chairperson of the Committee as authorized by applicable rules.

b. Review with the Auditors and the Company's management the Company's annual financial statements to be included in the Company's Annual Report on Form 10-K prior to the public announcement of financial results and the filing of the Form 10-K with the SEC.

c. Review the disclosure under "Management's Discussion and Analysis and Analysis of Financial Condition and Results of Operations" in each Annual Report on Form 10-K and Quarterly Report on Form 10-Q, prior the filing thereof with the SEC.

d. Review the Company's press releases announcing financial results or financial forecasts of the Company prior to their dissemination.

***e. Discuss with the Auditors their judgments about the quality, not just the acceptability, of the Company's accounting principles and financial disclosure practices used or proposed and the appropriateness of significant management judgments.***

f. Discuss with the Company's management and the Auditors the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

g. Based upon discussions with, and reliance upon, the Auditors and the Company's management, prepare any audit committee reports or other audit committee-related disclosure, in filings with the SEC or otherwise, required by applicable securities laws, rules and regulations or by the rules of any securities exchange or market on which securities of the Company are listed, including a report to be included in the Company's proxy statement stating whether the Committee has (i) reviewed and discussed the audited financial statement with management, (ii) discussed with the Auditors the matters required to be discussed by Statement on Auditing Standards No. 61, (iii) received from the Auditors disclosures regarding their independence required by Independence Standards Board Standard No. 1 and (iv) discussed with the Auditors their independence. The proxy statement shall also contain a statement

---

[1] All emphasis in bold and italics hereinafter is added.

as to whether the Committee members are independent and that the Committee has adopted a charter.

h. Review a report from the Auditors periodically, but no less than annually, as to (i) all critical accounting policies to be used, (ii) all alternative disclosures and treatments of financial information within generally accepted accounting principles ("GAAP") that have been discussed with the Company's management, the ramifications of the use of such alternative disclosures and treatments and the disclosures and treatments preferred by the Auditors; and (iii) other material written communications between the Auditors and the Company's management, including management letters and schedules of unadjusted differences.

***i. Recommend to the Board, based upon the review and discussion described above, whether the annual financial statements should be included in the Company's Annual Report on Form 10-K.***

## V.     SUBSTANTIVE ALLEGATIONS

24.     Ebix supplies infrastructure exchanges to the insurance, financial, travel, cash remittances, and healthcare industries.

### A.     The Individual Defendants Cause the Company to Issue Materially Misleading Statements

25.     On November 9, 2020, the Individual Defendants caused Ebix to file its quarterly report for the period ended September 30, 2020 on Form 10-Q with the SEC (the "3Q20 10-Q"), stating in relevant part:

> Our management, including our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our "disclosure controls and procedures" (as defined in Rule 13a-15(e) promulgated under the Exchange Act) as of September 30, 2020. Based on this evaluation the Company's Chief Executive Officer and Chief Financial Officer have concluded that these disclosure controls and procedures are effective. There were no changes in our internal control over financial reporting during the quarter ended September 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting. We have not experienced any material changes to our internal controls over financial reporting despite the fact that all non-essential employees are working remotely due to the COVID-19 pandemic. We are continually monitoring the impact of COVID-19 on the operating effectiveness of our internal control over financial reporting.

7

26. The 3Q20 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Raina and Hamil attesting to the accuracy of the financial statements, the effectiveness of internal controls, and the disclosure of all fraud.

27. The above statements in ¶¶ 25-26 were materially misleading because they failed to disclose: (1) that there was insufficient audit evidence to determine the business purpose of certain significant unusual transactions in Ebix's gift card business in India during the fourth quarter of 2020; (2) that there was a material weakness in Company's internal controls over the gift or prepaid revenue transaction cycle; and (3) that the Company's independent auditor was reasonably likely to resign over disagreements with Ebix regarding $30 million that had been transferred into a commingled trust account of Ebix's outside legal counsel.

**B.    The Truth Slowly Emerges**

28. On February 19, 2021, after the market closed, Ebix revealed that its independent auditor, RSM, resigned "as a result of being unable, despite repeated inquiries, to obtain sufficient appropriate audit evidence that would allow it to evaluate the business purpose of significant unusual transactions that occurred in the fourth quarter of 2020" related to the Company's gift card business in India. RSM had also stated that there was a material weakness related to Ebix's failure to design controls "over the gift or prepaid card revenue transaction cycle sufficient to prevent or detect a material misstatement." In addition, Ebix and RSM disagreed over the accounting treatment of $30 million that had been transferred into a commingled trust account of Ebix's outside legal counsel in December 2020. Specifically, in a Form 8-K filed with the SEC, the Company stated, in relevant part:

> RSM informed the Company that there was a disagreement under Item 304(a)(1)(iv) of Regulation S-K with respect to the classification of $30 million. In connection with a pending acquisition, in ***December 2020 the Company transferred $30 million to a commingled trust account of its outside legal counsel that was not under the direct control of the Company, and classified the funds as***

8

*a cash or cash equivalent on its balance sheet.* RSM discussed with the Company RSM's view that these funds could not be classified as a cash or cash equivalent but could be classified as other current assets. There was no dispute that the $30 million was owned by the Company and would be classified as part of current assets included in the financial statements.

\*     \*     \*

On February 15, 2021, RSM told the Chairman of the Company's Audit Committee during a telephone call that RSM was resigning as the Company's independent registered public accounting firm, effective immediately. *RSM then advised the Chairman on the call that it was resigning as a result of being unable, despite repeated inquiries, to obtain sufficient appropriate audit evidence that would allow it to evaluate the business purpose of significant unusual transactions that occurred in the fourth quarter of 2020, including whether such transactions have been properly accounted for and disclosed in the financial statements subject to the Audit. RSM informed the Chairman that the unusual transactions concerned the Company's gift card business in India.* RSM asserts that on that call it further advised the Chairman that if this requested information was further investigated it might materially impact the fairness or reliability of the financial statements subject to the audit or affect RSMs willingness to be associated with the Company's financial statements, but that since RSM had resigned, no further investigation would occur. The Chairman discussed with RSM the reasons for its resignation.

Promptly following the call between RSM and the Chairman of the Audit Committee, RSM sent the resignation letter dated February 15, 2021. RSM stated in its resignation letter that it was "resigning as a result of being unable, despite repeated inquiries, to obtain sufficient appropriate audit evidence that would allow it to evaluate the business purpose of significant unusual transactions that occurred in the fourth quarter of 2020, including whether such transactions have been properly accounted for and disclosed in the financial statements subject to the Audit." RSM informed the Company that the unusual transactions concerned the Company's gift card business in India. *RSM also stated in its letter that it believed that the Company's "internal control over financial reporting was not effective as of December 31, 2020 due to the identification of a material weakness. Specifically, management did not design or implement the necessary procedures and controls over the gift or prepaid card revenue transaction cycle sufficient to prevent or detect a material misstatement."* RSM further stated in the letter that, "because we have not completed the Audit, we cannot conclude on other control deficiencies that may rise to the level of a material weakness."

29.     On this news, the Company's share price fell as much as $20.24, or approximately 40%, to close at $30.50 on February 22, 2021, on unusually heavy trading volume.

9

30. On February 23, 2021, RSM disagreed with certain characterizations by the Company. A letter from RSM to the SEC was attached as an exhibit to a Form 8-K filed by the Company, stating:

> RSM agrees with the first sentence in the first paragraph, but otherwise disagrees with certain statements made in the two paragraphs in the section entitled "1: Disagreements Under Item 304(a)(1)(iv) of Regulation S-K." RSM disagrees that this issue was an initial difference of opinion based on incomplete facts or preliminary information rather than a disagreement pursuant to Item 304(a)(i)(iv). **_RSM repeatedly told the Company that the $30 million that the Company transferred on December 31, 2020 to an account of its outside legal counsel could not be classified as a cash or cash equivalent on its balance sheet. RSM stated this because the $30 million was transferred in connection with a pending acquisition to a commingled trust account that was not under the direct control of the Company._** At the time of RSM's resignation, the Company had not communicated that it accepted RSM's position. In addition, RSM did not tell the Company these funds could be classified as "other current assets," nor did RSM concur that the $30 million was "owned by the Company."
>
> RSM agrees with the first and last sentence, but otherwise disagrees with certain statements made in the Company's 8-K disclosure in the first paragraph of the section entitled "2: Reportable Events Under Item 304(a)(1)(v)." In its disclosure, the Company states: "RSM _asserts_ that on that call it further advised the Chairman that if this requested information was further investigated it might materially impact the fairness or reliability of the financial statements subject to the audit or affect RSMs willingness to be associated with the Company's financial statements, but that since RSM had resigned, no further investigation would occur." (emphasis supplied). RSM disagrees with the use of the term "asserts" to the extent it could create uncertainty as to what RSM communicated. In the call that occurred between RSM and the Chairman of the Company's Audit Committee on February 15, 2021, **_RSM stated clearly and unequivocally that if the information repeatedly requested by RSM — but which was not provided by the Company — related to gift cards issued by ItzCash/EbixCash in the fourth quarter of 2020 was further investigated, it might materially impact the fairness or reliability of the financial statements subject to RSM's audit or affect RSM's willingness to be associated with the Company's financial statements, and that, as a result of RSM's resignation, further investigation has not occurred_**.
>
> RSM agrees with the statements in the second paragraph of the section entitled "2: Reportable Events Under Item 304(a)(1)(v)," but has no basis on which to agree or disagree with the statements in the third and fourth paragraphs of that section or those made in the Company's Forward Looking Statements, except RSM agrees that it has been authorized to respond fully to the inquiries of any successor independent registered accounting firm.

10

31. On March 1, 2021, Ebix filed a notice stating that it could not timely file its annual report on Form 10-K for the period ended December 31, 2020 ("2020 10-K") because it was seeking a new accounting firm to complete the audit for fiscal 2020.

32. On March 8, 2021, the Company disclosed that it had engaged KG Somani & Co. ("KGS") as its independent auditor.

33. On April 27, 2021, Ebix filed its 2020 10-K. Regarding the commingled funds raised by RSM, the Company stated:

> The Company deposited $30.0 million with a third party bank in a trust account with commingled funds of its outside legal counsel in contemplation of a potential acquisition on December 31, 2020. The funds are included under the heading 'Cash and Cash Equivalent' in the consolidated balance sheet due to the nature of the said account, as the account had neither a restriction on the Company's ability to access the funds at its discretion nor did the account have restrictions associated with the potential acquisition that would limit the Company's control over and access to the cash. The contemplated acquisition did not occur as of December 31, 2020 or through the filing of this Form 10-K, and on February 2, 2021 the Company had the cash returned to its primary U.S. operating bank account.

34. As to the issues raised by RSM regarding the gift card business and the reliability of the Company's financial statements, the 2020 10-K stated, in relevant part:

> As referenced in the Company's February 20, 2021 press release following RSM's resignation, the Board engaged counsel, Skadden, Arps, Slate, Meagher & Flom LLP to, along with accounting experts from the consulting firm, AlixPartners LLP, assist the Company with respect to matters raised by the former auditor's resignation. Having reviewed the work performed by AlixPartners and considered their observations, the Board is satisfied that no steps are necessary with respect to any gift card business issues raised by the former auditor in its resignation.

35. Regarding the Company's controls and procedures, the 2020 10-K stated that "management believes that we maintained effective internal control over financial reporting as of December 31, 2020" and that "[t]here were no changes in [Ebix's] internal control over financial reporting identified in management's evaluation during the year ended December 31, 2020."

## VI. DAMAGES TO THE COMPANY

36. As a direct and proximate result of the Individual Defendants' conduct, Ebix has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

   a) Any funds paid to settle the Securities Class Action; and

   b) Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Ebix.

37. In addition, Ebix's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

38. The actions complained of herein have irreparably damaged Ebix's corporate image and goodwill. For at least the foreseeable future, Ebix will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Ebix's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

39. Plaintiff brings this action derivatively in the right and for the benefit of Ebix to redress injuries suffered, and to be suffered, by Ebix as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Section 10(b) of the Exchange Act. Ebix is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

40. Plaintiff will adequately and fairly represent the interests of Ebix in enforcing and prosecuting its rights.

41. Plaintiff has continuously been a shareholder of Ebix at times relevant to the wrongdoing complained of and is a current Ebix shareholder.

42. When this action was filed, Ebix's Board of Directors consisted of defendants Raina, Benz, Herter, Eckert, Bhalla, Keller, and Hebard and non-party director Priyanka Kaul. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

43. Raina is the Company's CEO, and therefore is not independent under NASDAQ listing rules. As an employee, Raina derives substantially all of his income from his employment with Ebix, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis. Moreover, as CEO and as alleged herein, Raina personally issued the misleading statements alleged herein and faces a substantial risk of liability in the Securities Class Action. As a result, Raina would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

44. Bhalla, Benz, and Keller served as the members of the Audit Committee at relevant times. As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations. In their capacities as Audit Committee members, Bhalla, Benz, and Keller reviewed and approved the disclosures regarding the Company's internal control over financial reporting and Ebix's financial statements. As alleged herein, Bhalla, Benz, and Keller failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in Ebix's SEC filings and other disclosures. Thus, Bhalla, Benz, and Keller breached their fiduciary duties and are not disinterested, and demand is excused as to them.

45. Demand is also excused as to Raina, Benz, Herter, Eckert, Bhalla, Keller, and Hebard who were aware of the issues raised by RSM contemporaneously or at least as of the time of the auditor's resignation. Their refusal to provide the requisite information to RSM to complete its audit of the Company's financial statements is not a valid exercise of business judgment, and any purported investigation overseen by them is therefore suspect.

## COUNT I

**Against Defendants Raina and Hamil for Breach of Fiduciary Duty**

46. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

47. Defendants Raina and Hamil each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Ebix's business and affairs, particularly with respect to issues as fundamental as public disclosures.

48. The conduct by defendants Raina and Hamil set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. Defendants Raina and Hamil intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Ebix.

49. In breach of their fiduciary duties owed to Ebix, defendants Raina and Hamil willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

50. In particular, defendants Raina and Hamil knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

51. As a direct and proximate result of the breaches of their fiduciary obligations by defendants Raina and Hamil, Ebix has sustained and continues to sustain significant damages,

including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### (Against Defendants Raina and Hamil for Contribution For Violations of Sections 10(b) and 21D of the Exchange Act)

52. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53. The conduct of Defendants Raina and Hamil, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

54. Ebix is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Ebix is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

55. As officers, directors and otherwise, Defendants Raina and Hamil had the power or ability to, and did, control or influence, either directly or indirectly, Ebix's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly

control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

56. Defendants Raina and Hamil are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

57. Defendants Raina and Hamil have damaged the Company and are liable to the Company for contribution.

58. No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## COUNT III

### Against the Defendants Benz, Herter, Eckert, Bhalla, Keller, and Hebard for Breach of Fiduciary Duty

59. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60. These Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Ebix's business and affairs, particularly with respect to issues as fundamental as public disclosures.

61. These Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. These Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Ebix.

62. In breach of their fiduciary duties owed to Ebix, these Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

63.     In particular, these Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

64.     As a direct and proximate result of these Defendants' breaches of their fiduciary obligations, Ebix has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Ebix, demands judgment as follows:

A.      Declaring that plaintiff may maintain this action on behalf of Ebix and that plaintiff is an adequate representative of the Company;

B.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.      Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Ebix;

D.      Directing Ebix to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Ebix and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    1.      a proposal to strengthen the Company's controls over financial reporting;

    2.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    3.  a proposal to strengthen Ebix's oversight of its disclosure procedures;

    4.  a provision to control insider transactions; and

    5.  a provision to permit the stockholders of Ebix to nominate at least three candidates for election to the Board;

  E.  Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Ebix has an effective remedy;

  F.  Awarding to Ebix restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

  G.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

  H.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: May 14, 2021        By: /s/Benjamin I. Sachs-Michaels
                **GLANCY PRONGAY & MURRAY LLP**
                Benjamin I. Sachs-Michaels
                Matthew M. Houston
                712 Fifth Avenue
                New York, New York 10019
                Telephone: (212) 935-7400
                E-mail: bsachsmichaels@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email:  fcruz@frankcruzlaw.com

*Counsel for Plaintiff Javier Calvo*

## **EBIX, INC. VERIFICATION**

I, Javier Calvo, do hereby verify that I am a holder of common stock of Ebix, Inc. and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint (the "Complaint"). I have reviewed and authorized the filing of the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge, and with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 5/13/2021

*Javier Calvo*
Javier Calvo